**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DARRYL PULVER**                                                                                   **PLAINTIFF**

**CASE NO.: 4:13CV00568 BSM/BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                       **DEFENDANT**

### RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for U.S. Chief District Judge Brian S. Miller. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The objecting party must serve the opposing party with a copy of his objections. Failing to object within 14 days waives the right to appeal questions of fact. *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). If no objections are filed, Judge Miller may adopt the recommended disposition without independently reviewing all of the record evidence.

## Report and Recommendation

Daryl Wayne Pulver seeks judicial review of the denial of his applications for disability insurance benefits and supplemental security income.  Mr. Pulver based his disability applications on problems with his back, left shoulder, left arm, and left leg.  (SSA record at 59, 62)  Mr. Pulver was forty-three years old at the hearing.  (*Id*. at 27)  He lived with his girlfriend of twenty-five years and their fourteen-year-old daughter.  (*Id*.)  He had a tenth-grade education and past relevant work as a crane operator.  (*Id*. at 28-29)

**The Commissioner's Decision**

After considering Mr. Pulver's applications, the Commissioner's ALJ determined that Mr. Pulver had severe impairments—back disorder and hypertension— but that he had the residual functional capacity ("RFC") to perform a reduced range of sedentary work.

Because the vocational expert identified jobs a person with Mr. Pulver's RFC could do, the ALJ concluded that Mr. Pulver was not disabled under the Social Security Act and denied the application.[1]  (*Id*. at 17-18)  After the Appeals Council denied Mr. Pulver's request for review, the ALJ's decision became a final decision for judicial

---

[1]The vocational expert testified that Mr. Pulver could perform the jobs of inspector-examiner, which is classified as sedentary unskilled work, and receptionist, which is classified as sedentary, semi-skilled work.

review. (*Id*. at 2-6)  Mr. Pulver filed this case to challenge the ALJ's decision. (Docket entry #2)

**Credibility**

Mr. Pulver alleged he had pain in his back which radiated down into his left leg. (SSA record at 30, 36)  He testified he had problems with his neck and cervical spine, which affected his left, dominant arm. (*Id*. at 31)  He also alleged problems with arthritis in his knees, depression, and high blood pressure. (*Id*. at 38-39)

Mr. Pulver complained that he could not sit for long due to pain in his back and left-leg numbness; he could stand for only a short period of time; and he used a cane after having fallen on numerous occasions due to pain in his back which caused numbness in his leg. (*Id*. at 30, 32, 35-37)  He described limitation in his ability to finger and handle, including problems holding a plate, grasping a fork, and fastening buttons. (*Id*. 31-32)  The ALJ found these allegations to be less than fully credible. (*Id*. at 15-16)  In this appeal, Mr. Pulver challenges the ALJ's credibility assessment.

An ALJ has a statutory duty "to assess the credibility of the claimant…." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).  A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).  To evaluate Mr. Pulver's credibility, the ALJ was obligated to follow the required two-step process and to consider the required factors. *Polaski v. Heckler*,

739 F.2d 1320, 1322 (8th Cir. 1984); *see also* SSR 96-7p, Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.  Thus, the question before the court is whether substantial evidence supports the ALJ's credibility assessment.

In discounting Mr. Pulver's credibility, the ALJ discussed the absence of medical evidence substantiating Mr. Pulver's allegations.  The ALJ stated that diagnostic findings were inconsistent with Mr. Pulver's allegations of disabling pain.  (*Id*. at 16)

Specifically, the ALJ pointed to three things to support his credibility determination.  First, he pointed to an April, 2012 nerve conduction study.  (*Id*. at 283-84)  The ALJ recognized that the study showed a marked degree of nerve conduction velocity across the elbow in the left ulnar nerve that was suggestive of ulnar nerve compression at the elbow.  (*Id*. at 16)  The ALJ went on to discount the findings, however, stating that "there were no treatment notes or functional limitations included with the study." (*Id*. at 16)

Second, the ALJ pointed to results of an April, 2011 MRI, which he said "showed straightening of the normal cervical lordosis but there was no significant scoliosis seen.  The overall impression was mild to moderate degenerative changes." (*Id*. at 16)

Finally, the ALJ stated that "there are no treatment notes [for Mr. Pulver] after May 2, 1011.  Yet, the claimant testified to being in constant pain.  Lack of treatment for an entire year calls into question the degree of pain the claimant alleges." (*Id*. at 16)

4

These were not good reasons for discounting Mr. Pulver's credibility, because the ALJ did not give good reasons for discounting the testimony. For example, the nerve conduction study, suggesting nerve compression at the elbow, was some objective medical evidence supporting Mr. Pulver's complaints of pain and limitation of function in his left dominant arm.

The ALJ, in making his credibility determination, relied on the report of the MRI of Mr. Pulver's cervical spine which showed moderate degenerative changes. (*Id*. at 234, 236) He did not address, however, the report of the MRI of Mr. Pulver's lumbar spine which showed "moderate to severe thecal sac compression at L3-L4 level with moderate thecal sac compression at L4-L5 level." The findings of the MRI of Mr. Pulver's lumbar spine are some objective medical evidence to support Mr. Pulver's complaints of back pain.

Finally, the ALJ's statement that "there are no treatment notes after May 2" and his assertion that Mr. Pulver went without treatment for "an entire year" is simply not supported by the record. The record indicates that Mr. Pulver filled prescriptions for high blood pressure and depression in July, 2011. (*Id*. at 193) Further, Mr. Pulver was examined and treated by Kevin Bay, M.D., on October 5, 2011, November 9, 2011, December 7, 2011, and January 4, 2012. (*Id*. at 274-84) Dr. Bay diagnosed Mr. Pulver with lumbalgia and hypertension for which he prescribed medication. Further, at the April, 2012 hearing, Mr. Pulver testified that, due to a lack of health insurance, he had

5

been seeing doctors at a free clinic. (*Id*. at 36) A reasonable mind would accept the foregoing evidence as adequate to show that the ALJ's credibility assessment is not supported by substantial evidence.

The next issue is whether the error was harmful. To show harmful error, Mr. Pulver "must provide some indication that the ALJ would have decided differently if the error had not occurred." Here, the ALJ relied solely on the lack of treatment and the lack of compliance with recommended treatment to conclude that Mr. Pulver's complaints of pain lacked credibility. The ALJ did not discuss in any detail the evidence in the record indicating that Mr. Pulver continued to seek treatment for back pain; nor did he discuss the other *Polaski* factors. An assessment of the other evidence in the record could have led the ALJ to a different conclusion about Mr. Pulver's credibility. As a result, the ALJ's errors were not harmless.

**Recommendation**

The ALJ erred by failing to discuss all of the diagnostic findings that were relevant to Mr. Pulver's allegations of disabling pain. Further, the ALJ erred by finding that Mr. Pulver had failed to seek treatment for a year. These errors led the ALJ to conclude that Mr. Pulver's complaints of limitations due to pain were not credible. The errors were harmful because, had the ALJ acknowledged all of Mr. Pulver's treatment records, he might have given Mr. Pulver's complaints of pain and limitation greater weight, leading to a more restricted residual functional capacity. For this reason, the Court recommends

reversing the Commissioner's decision and remanding the case for a proper assessment of Mr. Pulver's credibility.[2]  The court recommends this be a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 9th day of July, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

---

[2] On remand, the ALJ should also consider whether Mr. Pulver's alleged depression was a severe impairment.  In the light of the recommendation for remand, the Court need not address Mr. Pulver's remaining arguments.